UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**STONE & WEBSTER, INC.** *et al.*,

Plaintiffs,

v.

**GEORGIA POWER COMPANY** *et al.*,

Defendants.

Civil Action No. 12-1226 (CKK)

**MEMORANDUM OPINION**
(September 30, 2013)

This contract action involves an agreement concerning the design and construction of nuclear electrical generating units in Waynesboro, Georgia. On July 25, 2012, Plaintiffs Stone & Webster, Inc. and Westinghouse Electric Company LLC (together "Plaintiffs") filed the instant [1] Complaint against Defendants Georgia Power Company, Oglethorpe Power Corporation, Municipal Electric Authority of Georgia, and the City of Dalton, Georgia (collectively "Defendants"), asserting claims for breach of contract and violation of the Georgia Prompt Payment Act, Ga. Code. Ann. §§ 13-11-1 *et. seq*. Presently before the Court is Defendants' [20] Motion to Dismiss the Complaint and Supporting Statement of Points and Authorities. Upon consideration of the parties' submissions,[1] the applicable authorities, and the entire record, the

---

[1] While the Court renders its decision on the record as a whole, its consideration has focused on the following documents: Pls.' Compl. ("Compl."), ECF No. [1]; Defs.' Mot. to Dismiss the Compl. and Supp. Stmt. of P. & A. ("Defs.' MTD"), ECF No. [20]; Pls.' Mem. of P. & A. in Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n"), ECF No. [22]; Defs.' Reply Mem. of P. & A. in Supp. of Their Mot. to Dismiss the Compl. ("Defs.' Reply"), ECF No. [31]. In an exercise of its discretion, the Court finds that holding oral argument on the instant motions would not be of assistance in rendering a decision. *See* LCvR 7(f).

Court shall **GRANT** Defendants' motion to dismiss. Accordingly, this action is hereby dismissed, without prejudice, in its entirety.

## I. BACKGROUND

The dispute between the parties arises out of the design and construction of two nuclear electrical generating units at an electric generating plant in Waynesboro, Georgia (the "Project"). Compl. ¶ 9. Defendants, who are the owners of the Project, and Plaintiffs, who collectively are the contractor on the Project, entered into an Engineering, Procurement and Construction Agreement ("EPC Agreement"), pursuant to which Plaintiffs allegedly agreed to design, engineer, procure, construct, and test the nuclear electrical generating units and related facilities and structures at the plant. Compl. ¶ 10.

The instant Complaint asserts claims for breach of contract and violation of the Georgia Prompt Payment Act, Ga. Code. Ann. §§ 13-11-1 *et. seq*, relating to Plaintiffs' efforts to excavate and backfill soil at the site of the two future nuclear generating units.[2] Compl. ¶¶ 50-68. During the course of its work, Plaintiffs allege that they encountered soil conditions materially different than the conditions represented by Defendants, which served as the basis for the EPC Agreement on the contract price. Pls.' Opp'n at 4. Due to these conditions, Plaintiffs allege, they were required to perform significant additional work. *Id.* While Defendants compensated Plaintiffs for a portion of these costs, Defendants refused to pay Plaintiffs approximately $58 million that allegedly was due for this work. *Id.*

Article 27 of the EPC Agreement sets forth mandatory "Dispute Resolution" steps that the parties to the agreement must take to resolve any claims arising out of or relating to the EPC

---

[2] This Court dismissed a separate and distinct claim between these parties under the EPC Agreement in *Stone & Webster, Inc. v. Georgia Power Co.*, No. 12-cv-1783, 2013 WL 4616430 (D.D.C. Aug. 30, 2013), on the grounds that the action was more properly adjudicated in a mirror-image proceeding pending in the Southern District of Georgia.

Agreement. Compl. ¶ 47; Pls.' Opp'n, Exhibit A (EPC Agreement), Article 27. Sections 27.3 and 27.4 set forth the procedures by which the parties resolve such claims. Section 27.3 requires a party making a claim to notify the other party in writing. Pls.' Opp'n, Exhibit A, Article 27.3. If the claim remains unresolved thirty days after this written notice, then Section 27.3 requires that the parties undertake mediation pursuant to Section 27.4 prior to initiating further proceedings.

> 27.3   Resolution by Negotiation
>
> (a) As an express condition precedent to commencement of any further proceedings with respect to a Claim (except as may be provided under any applicable lien statute), the Party making such Claim shall notify the Contractor's Consortium Project Director or the Owners' Authorized Representative, as the case may be, in writing of such Claim. The Contractor's Consortium Project Director and the Owners' Authorized Representative shall meet within thirty (30) Days of receipt of the written notice of such Claim for the purpose of attempting to resolve the Claim.
>
> (b) If the Claim remains unresolved after the thirty (30) Day period described in Section 27.3(a) then the Parties shall undertake mediation pursuant to Section 27.4.

*Id.* Section 27.4, which governs any resulting mediation, provides for mediation pursuant to the Construction Industry Mediation Procedures of the American Arbitration Association ("AAA"), but allows the parties to mutually agree to other procedures. *Id.* at Section 27.4. In addition, Section 27.4 includes a "backstop" provision that allows a party to proceed to arbitration or litigation (depending upon the claim amount)[3] if the mediation has not concluded "within sixty (60) days after its commencement . . . ." *Id.*

> 27.4.   Mediation.

---

[3] The EPC Agreement defines "Claim Threshold Amount" as $25 million. The Plaintiffs' demand in this matter is $58 million, which as both parties agree, exceeds the threshold amount and proceeds via litigation rather than arbitration. *See* Defs.' MTD at 3 n. 3.

> (a) Any Claim not resolved pursuant to Section 27.3 shall be referred to mediation, which, unless the Parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Procedures of the AAA in effect at the time of the mediation. If the mediation has not concluded within sixty (60) Days after its commencement, then, as applicable:
>
>> (i) with respect to a Claim that exceeds the Claim Threshold Amount, either Party shall have the right to proceed to litigation of such Claim in a court of competent jurisdiction, in accordance with Section 34.3; and
>
>> (ii) with respect to a Claim that falls below the Claim Threshold Amount, such Claim shall be resolved pursuant to Section 27.5.
>
> (b) An executive vice president (or equivalent) of (i) in the case of Contractor, each Consortium Member (unless otherwise agreed to by the Consortium Members) and (ii) in the case of Owners, each Owner (or GPC acting as agent for such Owner) shall be in attendance at and participate in the mediation.
>
> (c) The Parties shall share equally the mediator's fee and any AAA filing fees equally. The mediation shall be held in Atlanta, Georgia, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements pursuant to Section 27.6.

*Id.*.

The EPC Agreement also sets out requirements regarding the venue for any litigation that results under the Agreement. Section 34.3 sets this Court as the non-exclusive jurisdiction for disputes. *Id.* at Section 34.3. Pursuant to this provision, the parties waive their rights to dismiss the action on the basis of forum non-conveniens or improper venue. However, the contract expressly reserves the right to raise first-to-file challenges with respect to venue.

> 34.3 Venue: The Parties agree to the non-exclusive jurisdiction of the United States District Court for the District of Columbia for any legal proceedings that may be brought by a Party arising out of or in connection with this Agreement or for recognition or enforcement of any judgment. . . . Each party hereby waives any right to stay or dismiss any action or proceeding under or in connection with this Agreement brought before the foregoing court on the basis of forum non-conveniens or improper venue. For the avoidance of doubt, the Parties do not, by this Section 34.3, waive any first-to-file challenges to venue.

*Id.*

After unfruitful discussions and communications between the parties regarding Plaintiffs' claim, on April 27, 2012, Plaintiffs submitted to Defendants a Change Dispute Notice, which commenced the dispute resolution process under Article 27 of the EPC Agreement. Pls.' Opp'n at 4. The parties were unable to resolve the dispute during the subsequent month and agreed that they should proceed with mediation pursuant to Section 27.4 of the EPC Agreement. *Id.*

On May 25, 2012, Plaintiffs filed a Request for Mediation with the AAA. *Id.* at 7, Exhibit B (E-mail requesting mediation with AAA). However, subsequently on June 13, 2012, before an AAA mediator had been selected by the parties, the parties mutually agreed to modify the procedures for the pending mediation, concluding that the mediation would no longer be conducted in accordance with the Construction Mediation Procedures of the AAA, as provided in the original EPC. *Id.* at 8-9; Defs.' MTD, Exhibit 3 (E-mail exchange between Plaintiffs' counsel and AAA representative) (noting that AAA "mediator selections . . . are due . . . June 15, 2012). Rather, the parties agreed to proceed with a non-AAA mediator, and abide by a different set of procedures "as agreed by the parties and Mr. Green." Pls.' Opp'n, Exhibit F (Letter from Stephen Stallings to Andrew Ness). To wit, in a letter to Defendants "confirm[ing] the Parties' agreement to modify the procedures for the pending mediation," Plaintiffs wrote:

1. Rather than selecting a mediator from the American Arbitration Association's (the "AAA") roster of mediators, the mediator will be Eric D. Green, Esq.;
2. The mediation will be held on July 30 and 31, 2012 in Atlanta or such other location as agreed by the parties and Mr. Green;
3. Rather than conducting the mediation in accordance with the Construction Industry Mediation Procedures of the AAA, as provided in §27.4(a) of the EPC Agreement, the mediation will instead proceed in accordance with the procedures as agreed by the Parties and Mr. Green;
4. Except as specifically agreed to herein, all other provisions of Article 27 of the EPC Agreement remain in full force and effect.

*Id.*

On July 25, 2012, Plaintiffs filed suit in this Court. Pls.' Opp'n at 9. Three business days later, on July 30, 2012, the parties participated in mediation before Eric Green in Atlanta, Georgia, which concluded unsuccessfully on the same day. *Id.* On August 23, 2012, Defendants filed a Complaint regarding the same contractual disputes at issue here in the United States District Court for the Southern District of Georgia, the jurisdiction where the nuclear generating units are being constructed and where most of the events at issue in this dispute took place. *See Georgia Power Company, et al. v. Westinghouse Electric Company, et al.*, No. 12-cv-123 (S.D. Ga.) (JRH-WLB). Defs.' MTD at 4-5. Four days later, in this Court, Defendants filed the present [20] Motion to Dismiss the Complaint and Supporting Statement of Points and Authorities. Defendants now argue that Plaintiffs failed to satisfy the contractual condition precedent of mediation prior to bringing suit in this Court. Defs.' MTD at 1.

## II. LEGAL STANDARD

Defendants move to dismiss the Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Defs.' MTD at 1.

As an initial matter, the Court is skeptical of Defendants' invocation of Fed. R. Civ. P. 12(b)(1) in this context. Other courts have questioned whether a party's alleged failure to satisfy a condition precedent in a private contract deprives a court of subject matter jurisdiction. *See, e.g., N-Tron Corp. v. Rockwell Automation, Inc.*, No. 09-cv-0733, 2010 WL 653760, at *5 (S.D. Ala. Feb. 18, 2010) ("[I]t is abundantly clear that N-Tron's admitted non-compliance with the mandatory dispute resolution procedures embodied in the MoM does not implicate jurisdictional concerns."). As the court noted in *N-Tron*, Defendants' argument "conflates non-performance of a contractual condition precedent with deprivation of subject matter jurisdiction." *Id.* at *4. As

6

support for their position that the 12(b)(1) analysis applies here, Defendants cite to *Mortimer v. First Mount Vernon Indus. Loan Ass'n*, No. 03-cv-1051, 2003 WL 23305155 (D. Md. May 19, 2003), in which the United States District Court for the District of Maryland granted a motion to dismiss under Rules 12(b)(1) and 12(b)(6) based on the plaintiff's failure to honor a contractual mediation clause. The court in *Mortimer* provides no explanation for the apparent lack of subject matter jurisdiction, and indeed, the opinion is unclear on whether the dismissal is even actually for lack of subject matter jurisdiction. *See id.* at *1 ("For the reasons stated herein, I shall dismiss Mortimer's complaint without prejudice for failure to mediate."). *See also Ziarno v. Gardner Carton & Douglas*, No. 03-cv-3880, 2004 WL 838131, at *3 (E.D. Pa. Apr. 8, 2004) (providing a similarly unelaborated conclusion that failure to abide by a contractual condition precedent requiring mediation prior to suit deprives a court of subject matter jurisdiction). Given that other courts in this district have implicitly concluded that failure to abide by a mediation clause that functions as a condition precedent does not deprive a court of subject matter jurisdiction, *see Cunningham & Assocs., PLC v. ARAG, LLC*, 842 F.Supp.2d 25, 30 (D.D.C. 2012) (employing the remedy of a stay, rather than dismissal, for failure to fulfill a contractual condition precedent), this Court is reluctant to interpret this privately agreed-upon condition as a jurisdictional bar. Accordingly, the Court does not consider Defendants' motion properly brought under Rule 12(b)(1).

Nevertheless, the Court does consider Defendants' motion to dismiss properly brought under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6) requires that a complaint contain " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957));

7

*accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 1964–65; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citing *Twombly*, 550 U.S. at 556).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F.Supp. 914, 915 (D.D.C.1994). Further, the Court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C.Cir.1997). "This includes documents . . . that are referred to in the complaint and [] central to the plaintiff's claim." *Long v. Safeway, Inc.*, 842 F.Supp.2d 141, 144 (D.D.C. 2012) (internal punctuation and citation omitted)

### III. DISCUSSION

Section 27.4 of the EPC Agreement provides that a party may file suit on a claim under the agreement only either (a) after the mediation has concluded or (b) "[i]f the mediation has not concluded within sixty (60) Days after its commencement . . . ." Pls.' Opp'n, Exhibit A, Section

27.4. Here, the parties disagree about whether Plaintiffs' suit, brought on July 25, 2012, meets the latter criteria. Defendants argue that the mediation commenced only when the parties sat down before mediator Eric Green in Atlanta, Georgia. Since the in-person mediation occurred on July 30, 2012, they argue Plaintiffs' suit is plainly premature. Plaintiffs, by contrast, argue that they "commenced" the mediation pursuant to the applicable AAA rules on May 25, 2012 when they submitted their request for mediation. Accordingly, Plaintiffs contend that their suit, filed more than sixty days after May 25, 2012 is timely under Section 27.4 of the EPC Agreement. The parties agree, and the EPC Agreement mandates, that the construction of the contract must be resolved pursuant to Georgia law. *See* Pls.' Opp'n, Exhibit A, Section 34.1 ("The validity, construction, and performance of this Agreement shall be governed by and interpreted in accordance with the laws of the State of Georgia . . . .").

The Court concludes that Plaintiffs' suit is untimely under either definition of "commence" because in their June 13, 2012 letter, the parties substantially changed the terms of the EPC Agreement with respect to mediation. In this letter – sent by Plaintiffs to Defendants – the parties confirm their agreement that mediation would no longer occur with an AAA mediator, but would rather take place before Eric Green, a mediator unaffiliated with the AAA. *See* Pls.' Opp'n, Exhibit F. More importantly, the parties agreed that "[r]ather than conducting the mediation in accordance with the Construction Industry Mediation Procedures of the AAA, as provided in §27.4(a) of the EPC Agreement, the mediation will instead proceed in accordance with the procedures as agreed by the Parties and Mr. Green." *Id.* This change is plainly permissible under the EPC Agreement, which provides that mediation "shall be in accordance with the Construction Industry Mediation Procedures of the AAA" "unless the Parties mutually agree otherwise." Pls.' Opp'n, Exhibit A, Section 27.4(a). Pursuant to this provision, the parties

9

mutually agreed to a new procedure for mediation that would no longer be governed by the AAA rules originally specified. Indeed, at the time of this letter, the parties had not even selected an AAA mediator. *See* Defs.' MTD, Exhibit 3 (June 14, 2012 e-mail from AAA requesting that parties make their AAA mediator selection by June 15, 2012). At the same time, despite this move away from AAA mediators and rules, the parties clearly specified in this letter that all other provisions of Section 27 – including the sixty-day backstop provision – would "remain in full force and effect." Pls.' Opp'n, Exhibit F.

Having agreed that the AAA rules no longer governed the mediation in their June 13, 2012 letter and agreeing to proceed with a non-AAA mediator, Plaintiffs can hardly rely on these rules to support the argument that the sixty day clock began running on May 25, 2012. Plaintiffs' argument that a request for mediation constitutes "commencement" of the mediation hinges on the AAA Rules referenced in the EPC Agreement. Although the Construction Industry Mediation Procedures of the AAA do not define "commence", they do describe a request for mediation as the "initiation" of a mediation. *See* Pls.' Opp'n, Exhibit B (AAA Construction Industry Mediation Procedures). The use of the word "initiate" in the AAA rules represents the crux of Plaintiffs' argument that their suit is timely. Yet in their June 13, 2012 letter, Plaintiffs agreed that these rules would no longer govern the mediation. Nowhere does this letter specify that the AAA rules would remain in effect for the limited purpose of determining the date of the mediation's commencement. Rather, as they were permitted to do under the EPC Agreement, the parties mutually agreed to proceed outside the AAA rules.

Moreover, even if Plaintiffs definition of "commence" is correct outside of the context of the AAA rules, they cannot rely on their May 25, 2012 request as the start of the sixty day clock. This request to the AAA was subsequently withdrawn when the contract was significantly

modified in the June 13, 2012 letter, as the parties decided to proceed before an *entirely* different mediator with an *entirely* different set of procedures. Defs.' MTD, Exhibit 3 (E-mail to AAA representative in which Plaintiffs' counsel states that "[t]he parties have agreed to proceed with their mediation outside of the AAA/ICDR."). Accordingly, *even if* a request for mediation constitutes commencement of the mediation, the earliest date of commencement that Plaintiffs can point to is June 13, 2012, when they requested mediation before Eric Green. Plaintiffs cannot point to their defunct request for mediation with the AAA, as this would plainly never lead to the mediation with Defendants. And even viewing June 13, 2012 as the date of commencement, Plaintiffs' suit remains untimely, as the sixty day clock would not have expired until August 13, 2012.

Plaintiffs argue that the Court should still look to the May 25, 2012 date as the start of the sixty-day period because in a June 5, 2012 e-mail Plaintiffs informed Defendants that "the 60 day period for the mediation under the contract expires on July 24th . . . ." Pls.' Opp'n at 19 (citing Pls.' Opp'n, Exhibit E (E-mail from Stephen Stallings to Andrew Ness)). Pursuant to this e-mail, Plaintiffs argue, Defendants were on notice of, and because they did not object, conceded to, Plaintiffs' understanding of the date of the mediation's commencement. In support of this argument, Plaintiffs point to a Georgia statute stating that "the meaning placed on the contract by one party and known to be thus understood by the other party at the time shall be held as the true meaning." Ga. Code. Ann. § 13-2-4. Yet, as Defendants point out, Ga. Code. Ann. § 13-2-4 "can have no application unless the contract is ambiguous." *Loveable Co. v. Honeywell, Inc.*, 431 F.2d 668, 675 (5th Cir. 1970) (discussing an identical, prior version of this provision) (internal citation omitted). Here, the contract, as modified by the June 13, 2012 letter, unambiguously states that the contract is proceeding outside of the AAA rules without any

11

caveats. Plaintiffs cannot introduce external evidence to show that this clear term *actually meant* proceeding outside all AAA rules *except for* the time of a mediation's commencement. "Where parties have reduced to writing what appears to be a complete and certain agreement, it will, in the absence of fraud, accident or mistake, be conclusively presumed that the writing contains the entire contract . . . ." *Andrews v. Skinner*, 158 Ga. App. 229, 230, 279 S.E.2d 523, 526 (Ga. Ct. App. 1981). *See also Archer v. Carson*, 213 Ga. App. 161, 163, 444 S.E.2d 82, 85 (Ga. Ct. App. 1994) ("language which is unambiguous will not be construed as ambiguous based on extrinsic circumstances."). Furthermore, the parties' June 13, 2012 letter leaves in place and implicitly incorporates the merger clause in the EPC Agreement, which states that, "[t]his Agreement contains the entire agreement and understanding between the Parties as to the subject matter hereof, and merges and supersedes all prior agreements, commitments, representations, writing and discussions between them with respect to the subject matter thereof . . . ." Pls.' Reply, Exhibit 2 (EPC Agreement excerpts). The June 5, 2012 e-mail from Plaintiffs – coming before the June 13, 2012 letter in which the parties mutually revised specific terms of the agreement but left all other provisions in place – represents the sort of prior writing excluded by this merger clause. Accordingly, Plaintiffs cannot point to it as conclusive support for their interpretation. *See Tampa Bay Fin., Inc. v. Nordeen*, 272 Ga. App. 529, 535, 612 S.E.2d 856, 861 (Ga. Ct. App. 2005) ("Whether the promises were made, however, is simply not significant because, even if made, the promises themselves were contradicted by the merger clause and could not be reasonably relied upon."). Moreover, it bears noting that the June 5, 2012 e-mail is merely a statement of interpretation of the AAA Rules in effect under the original EPC Agreement. Yet, as noted, the parties subsequently explicitly discarded these rules by mutual consent in their June

13, 2012 letter modifying the EPC Agreement. Accordingly, the June 5, 2012 e-mail represents merely a unilateral interpretation of a *prior* agreement.

Having concluded that Plaintiffs' suit is untimely, the Court must determine the appropriate remedy. Defendants request that the Complaint be dismissed without prejudice. Defs.' MTD at 10-12; Defs.' Reply at 16-19. Plaintiffs, on the other hand, argue that dismissal is inappropriate. Pls.' Opp'n. at 20-22. Plaintiffs note that in other cases where parties have failed to mediate as a condition precedent to filing suit, courts have stayed the proceedings to allow the mediation to occur. *Id*. "When confronted with objections that Plaintiffs have initiated litigation without satisfying arbitration or mediation requirements, courts routinely stay rather than dismiss the proceedings to allow for the implementation of the agreed-upon dispute mechanism." *N-Tron Corp.*, 2010 WL 653760, at *7. *See also Advanced Body Care Solutions, LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1241 (11th Cir. 2008) ("district courts have inherent, discretionary authority to issue stays in many circumstances, and granting a stay to permit mediation (or to require it) will often be appropriate."). Yet, as Plaintiffs admit, a stay would plainly be pointless here, where the mediation concluded a mere five days after Plaintiffs filed suit. Pls.' Opp'n at 22. Indeed, although almost all of the cases Plaintiffs cite focus on the appropriateness of a stay, Plaintiffs are really arguing that the Court should simply ignore Plaintiffs' failure to comply with the condition precedent and deem the motion to dismiss moot.

Defendants by contrast, argue that dismissal without prejudice is the appropriate remedy. They contend that those courts granting stays to allow mediation represent a minority view. Defs.' Reply at 16. Yet the cases cited by Defendants are similarly unhelpful, as they involve courts dismissing suits without prejudice to allow mediation to occur. *See, e.g., Loancraft v. First Choice Loan Svcs., Inc.*, No. 12-cv-10138, 2012 WL 628617, at *3 (E.D. Mich., Feb. 27,

2012) (dismissing without prejudice to allow mediation to occur); *Brosnan v. Dry Cleaning Station, Inc.*, No. 08-cv-2028. 2008 WL 2388392, at *2 (N.D. Cal. June 6, 2008) (same); *Ziarno*, 2004 WL 838131, at *3 (same). Here, as noted, the Court cannot dismiss without prejudice to allow mediation to occur because the mediation has already happened. Neither party cites – and the Court is unable to locate through its own research – any case law addressing the appropriate remedy in this factual scenario, where a contractual condition precedent to filing suit is satisfied *after* the Plaintiffs file suit.[4]

Nevertheless, even applying equitable considerations of the sort used in determining whether to stay or dismiss an action – the mode of analysis proposed by Plaintiffs – the Court concludes that dismissal of this action without prejudice is appropriate here. *See Feld Entertainment, Inc. v. ASPCA*, 523 F.Supp.2d 1, 3 (D.D.C. 2007) ("In determining whether to grant a stay, 'the court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side.") (quoting *Gordon v. Fed. Deposit Ins. Corp.*, 427 F.2d 578, 580 (D.C. Cir. 1970)). In the cases cited by Plaintiffs, courts have focused on three primary factors in determining the appropriate remedy: the harm of dismissal to the Plaintiff, the harm of not dismissing to the Defendant, and the interests in judicial efficiency. *See N-Tron*, 2010 WL 653760, at *8 (considering harm to plaintiff of dismissing case, harm to defendant of not dismissing case, and questions of judicial economy); *Loancraft*, 2012 WL

---

[4] Plaintiffs do cite *Perry v. Beggs*, 581 F.Supp. 815, 816-17 (D.D.C. 1983), where the court permitted a premature Title VII suit to proceed when plaintiff satisfied a condition precedent after filing suit. There, the plaintiff received a right-to-sue notice from the EEOC only after filing her Title VII suit. The court concluded that her subsequent receipt of the letter cured any defect caused by filing suit prior to receiving the letter. *Perry* is inapposite here. In *Perry*, there was no discussion of prejudice to the opposing party from permitting the premature suit to go forward. Here, as discussed *infra*, allowing Plaintiff's premature suit to ripen would reward the Plaintiffs at the expense of the Defendants, who are deprived the opportunity to file suit first in the forum of their choice.

628617, at *3 (considering harm to Plaintiff in determining whether to stay or dismiss case). Analyzing Plaintiffs' claim under these three factors, dismissal without prejudice is plainly the proper remedy.

Here, the harm to Plaintiffs of dismissing without prejudice is minimal. In *N-Tron*, the court concluded that the harm of dismissing the case without prejudice "would be considerable, inasmuch as a dismissal without prejudice would be tantamount to a dismissal with prejudice, effectively barring it from ever litigating its fraud and deceit claims against [defendant] because of the now-expired limitations period." 2010 WL 653760, at *8. Here, there is no allegation that Plaintiffs will be barred from ever litigating these claims. This dismissal is without prejudice, and statutes of limitations do not appear to bar a renewed suit on these claims. *See* Ga. Code. Ann. §§ 9-3-24, -25, -26. Moreover, even if Plaintiffs choose not to file suit in this Court, they still have an opportunity to litigate these claims in the mirror-image proceeding currently pending before the Southern District of Georgia. Accordingly, dismissing Plaintiffs' suit without prejudice will not significantly impair their interests.

By contrast, the harm to Defendants of allowing this case to proceed is significant. As Defendants point out, the timing provisions in the contract – allowing suit either upon the conclusion of mediation or sixty days after its commencement – set up an honest race to the courthouse between the parties. Pls.' Opp'n, Exhibit A, Section 34.3. Indeed, the EPC Agreement explicitly preserves each party's right to raise a first-to-file challenge to venue. *Id.* Although this Court was one potential venue for suit, the contract makes clear that it was *not* the exclusive venue. *Id.* By filing suit prematurely, Plaintiffs deprived Defendants of their right to file suit first in the venue of their choosing. If this Court were to decide for Plaintiffs, and allow this suit to proceed in spite of their failure to abide by the condition requiring mediation, it would

15

be setting a precedent that parties may disregard such conditions and pay no consequences so long as they subsequently engage in fruitless mediation. Such a position would plainly render the mediation requirement a nullity. Furthermore, it would reward parties who file suit prematurely by eliminating the race to the courthouse contemplated in the contract, potentially depriving a party of the first-to-file challenge that the contract expressly reserves. Plainly, allowing this suit to proceed would not "place [Defendant] in precisely the same bargained-for position it would have occupied had [Plaintiff] complied with the [mediation] clause before filing suit in the first place." *N-Tron*, 2010 WL 653760, at *8.

Finally, the interests of judicial efficiency do not outweigh these considerations. "The Court has inherent power to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Feld Entertainment*, 523 F.Supp.2d at 5. Although there is admittedly a loss in time and effort in dismissing this case without prejudice rather than allowing it to proceed, the lack of harm to Plaintiffs from dismissal and the prejudice to Defendants from a lack of dismissal plainly dwarf any marginal savings of time and effort. Weighing these considerations, the Court concludes that dismissal without prejudice is the appropriate remedy to protect the parties' interests.

Accordingly, finding Plaintiffs' arguments to the contrary unavailing, this Court concludes that Plaintiffs' suit was not timely brought under the EPC Agreement, as modified by the June 13, 2012 letter between the parties. Because of the substantial prejudice to Defendants that would result from excusing this error by Plaintiffs, the Court finds that dismissal without prejudice is the appropriate remedy.

## IV. CONCLUSION

For all of the reasons stated herein, the Court finds that Plaintiffs' suit is not timely under the terms of the EPC Agreement governing this dispute. Accordingly, Defendants' [20] Motion to Dismiss the Complaint and Supporting Statement of Points and Authorities is **GRANTED**. This action is hereby dismissed without prejudice. An appropriate Order accompanies this Memorandum Opinion.

Dated: September 30, 2013

>             /s/
> COLLEEN KOLLAR-KOTELLY
> United States District Judge